IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
Southern Division

| | |
|---|---|
| GRADY GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO.: 09-CV-00797-WS-C |
| ) | |
| BOARD OF SCHOOL COMMISSIONERS ) | |
| OF MOBILE COUNTY, in their Official ) | |
| Capacity, and DR. ROY D. NICHOLS, in ) | |
| His Official Capacity as Superintendent of ) | |
| The Mobile County Public School System, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Grady Gordon respectfully submits this opposition to the Defendants' motion for summary judgment. For the reasons stated herein, genuine issues of material fact preclude summary judgment.

**FACTS**

This is an ADA case involving a school principal's attempts to return to work subsequent to a work related injury in 2007 that required surgery to his neck and shoulder. Central to the case is a meeting that was held in May 2008 between the Plaintiff and several key school personnel. It is at this May 2008 meeting that the Plaintiff asserts he was informed to not return to work unless his physicians released him without restriction. The school personnel's recollection of this meeting is

"sketchy" at best. There is much conflict between the meeting participants' recollection of the meeting. Several key participants cannot even agree if they were in attendance at the meeting and/or how they came to be at the meeting. The Plaintiff will not burden the Court with the plethora of inconsistencies in testimony; rather, and as all factual disputes must be resolved in favor of the Plaintiff at the summary judgment stage, the Plaintiff offers the following statement of facts that support his claim:

    The Plaintiff worked as an educator employed by the Mobile County Public School system for twenty-six plus years. (Deposition Gordon p. 9; Complaint 8). The Plaintiff began working as a physical education instructor in the late 1980s and worked his way up to administration serving as both an assistant principal and eventually principal of the Continuous Learning Center or "CLC." (Deposition Gordon pp. 31-33; Complaint 8; 10). CLC is an alternative school for special education students and students with behavioral problems. (Deposition Martin p. 14; Complaint 8). As CLC is an alternative school, there are occasions when administration assigned to the school are called upon to break up altercations or fights and/or physically control students. (Deposition Martin p. 14). In September 2007, the Plaintiff was injured during an attempt to restrain an out of control student. (Deposition Gordon pp 34-39; Complaint 9). As a result of this altercation, the Plaintiff sustained injuries to both his shoulder and neck which required two surgeries. (Deposition Gordon p. 20; Complaint 9). Likewise, the Plaintiff underwent physical therapy. (Deposition Gordon pp. 40-41). Plaintiff returned to work as principal at CLC in May 2008. (Complaint 10). The Plaintiff was released by his physicians to return to light duty work and administrative duties without the threat of physical altercations. (Deposition Gordon pp. 26-28; 69-70, Complaint 10). The Plaintiff's injuries have left him disabled within the meaning of the ADA in that his injuries interfere with

numerous life activities.  For example, the Plaintiff is unable to sit for longer than thirty minutes at a time.  (Deposition Gordon p. 23; 10-20-08 EEOC Intake Questionnaire Response No. 1 pp. 1-2). Further, he is unable to be physically active, cannot carry a sack of groceries, nor can he bend over to tie his own shoe due to the metal plate securing his neck vertebrae.  (EEOC Intake Questionnaire Response 1 pp. 1-2).   Attempting to bend forward cuts off his breathing as the metal plate in his neck impinges his esophagus.  (*Id.*).  Additionally, the Plaintiff is in constant pain and is unable to sleep without pain medications.  (*Id.;* Deposition Gordon p. 23-24*).*

Upon the Plaintiff's return to work in late May 2008, the Plaintiff became aware of the potential for major budget cuts and staff reduction at CLC. (Deposition Gordon pp. 44-45).  The Plaintiff requested his secretary to coordinate a meeting with Phaedra Fox, the Plaintiff's new supervisor, and Shelia Martin, Director of Special Education, to discuss budget issues and to generally discourage personnel cuts at CLC.  (Deposition Gordon pp. 45-47).  The Plaintiff also invited Sharron McGee to the meeting as she was the assistant principal at CLC.  (Deposition Gordon p. 47).  On the day the meeting was to occur, the Plaintiff and Ms. McGee traveled to the school system's central office to meet with those whom had been invited.  (Deposition Gordon p. 51-53).  Once at the meeting, the Plaintiff began to discuss the budget issues; however, Ms. Fox interrupted him indicating that Martha Peek, the system's deputy superintendent wanted to speak to him. (Deposition Gordon p. 53).  Upon entering the meeting, Ms. Peek began questioning the Plaintiff about his ability to function as an administrator in light of his health problems.  (Deposition Gordon p. 53; Deposition Martin pp. 16-19).  Ms. Peek had her secretary bring into the room copies of the Plaintiff's medical documentation.  (Deposition Gordon pp. 52-53).  The Plaintiff informed Ms. Peek and those present that he was adjusting to being back to work, he had rescheduled any

physical therapy to occur at the end of the day, and that if they would give him "an opportunity" that he would progressively get back into what he needed to do. (Deposition Gordon p. 54). The Plaintiff also requested that security guards be provided to CLC in similar fashion as were being provided to Point Academy, another alternative school in the system. (*Id.*). This accommodation would allow him to perform his administrative duties. (Deposition Gordon pp. 54-55). The Plaintiff maintained that he could perform the administrative duties associated with the position. (Deposition Martin p. 21). Ironically, the request for additional security was an ongoing concern at CLC. (Deposition Martin pp. 19-20). In October 2010, Superintendent Roy Nichols announced that the school system planned to hire several uniformed guards to work full time at various middle and high schools. (Ex. 1). Superintendent Nichols stated that security guards would be placed at schools based on discipline problems and that the cost to the system would be approximately $275,400 annually. (Id.). At this point, the Plaintiff was told by Ms. Peek to not report back to work unless he was released by his doctors to work "at 100%" and the meeting concluded. (Deposition Gordon pp. 55-57; Deposition Martin p. 38-39). This directive is given despite the deputy superintendent's assertion that a resource officer at CLC can handle students who physically act out. (Deposition Peek pp. 38-40). This directive was given despite the position of "principal" being considered a "light-duty position." (Deposition Smith p. 15). This directive was given despite the fact that physically restraining students is not an essential function of the position of principal of CLC. (Ex. 2). Likewise, this directive was given despite the Plaintiff's successor, Ms. McGee, not being expected to literally "break up" fights but rather being expected to "calm" the situation with the assistance of others including male teachers and officers. (Deposition Fox 65-68).

The Plaintiff, having exhausted all leave that was available to him, consulted with his physicians regarding being released to work without restrictions; however, neither physician would release him without restrictions. (Deposition Gordon pp. 58, 64-65). The Plaintiff attempted to speak with other personnel at the school regarding his options. The Plaintiff spoke with Ms. Dailey, Mr. George Smith's assistant. (Deposition Gordon pp. 55-58). The Plaintiff was informed that as he was out of leave and did not belong to a sick bank from which leave could be borrowed, his only option was to retire. (*Id.*). Without his regular income, the Plaintiff suffered economic hardship and lost his car and lost his river property in foreclosure. (Deposition Gordon p. 55-56). Eventually and without any other options, the Plaintiff applied for retirement. The Plaintiff initially retired as a result of regular years of service but was eventually approved for disability retirement with the Retirement Systems of Alabama. (Deposition Gordon p. 65-66). No evidence exists that further dialogue was had by the administration with the Plaintiff regarding what other working arrangements could be made to address his disability. (Deposition Martin p. 38). Further, Mr. Smith, the system's EEOC compliance officer, claims never to have been made aware by anyone of any concern with the Plaintiff returning to work with some physical restrictions. (Deposition Smith pp.14-15). Lastly, the medical releases as provided by the Plaintiff would have released him to return to work at CLC according to Mr. Smith. (Deposition Smith pp. 41-43). Smith, as the system's EEOC compliance officer, does not understand why Ms. Fox or Ms. Peek did not speak with him regarding the medical releases, and had they done so, Mr. Smith maintains he would have cleared the Plaintiff to work as the principal at CLC. (Deposition Smith pp. 42-49).

LAW AND ARGUMENT

The Defendants advance three reasons as to why summary judgment in their favor is proper: (1) the Plaintiff does not have a disability, (2) even if disabled the Plaintiff cannot be accommodated and (3) the Plaintiff suffered no adverse employment action. At the outset it must be noted that to establish a prima facie case of disability discrimination under the ADA, a plaintiff "must prove that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir.), *cert. denied*, 531 U.S. 927 (2000). Discrimination under the ADA includes failing to provide reasonable accommodations for known disabilities unless the accommodations would result in undue hardship to the employer. §§§42 U.S.C. § 12112(b)(5)(A); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). The Defendant does not assert in its motion or brief that the Plaintiff is not a qualified individual. Accordingly, that point for the purposes of summary judgment must be conceded to the Plaintiff[1]. Thus, the Plaintiff will address the specific arguments raised by the Defendants as follows:

1.   <u>The Plaintiff is disabled within the meaning of the ADA.</u>

At pages 4 through 6 of its summary judgment brief, the Defendants generically argue that summary judgment is proper as the Plaintiff has failed to establish that he is a disabled person covered by the ADA. When viewing the facts as presented in a light most favorable to the Plaintiff, it is clear that the Plaintiff suffers from a bone fide disability within the meaning and protections of the ADA presently and at the time the Defendant summarily, constructively dismissed the Plaintiff.

---

[1] This argument is most likely not made due to the prevailing view that "if a plaintiff has a long tenure at a certain position, [this Court will] infer that he or she is qualified to hold that particular position." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1360 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109 (2000). Further the 11th Circuit has consistently held "[This Court's] case law quite clearly instructs that plaintiffs, who have been discharged from a previously held position, do not need to satisfy the McDonnell Douglas [qualification prong]" *Id.*

Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual". 42 U.S.C. § 12102(2). Further, "major life activities" include but are not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.*

It is undisputed that the Defendant suffered significant injuries as a result of his on the job injury in September 2007. This injury forced the Plaintiff to undergo major surgery to both his neck and shoulder. The Plaintiff's surgeries and metal implant adversely affect more than one major life activity. The Plaintiff is in constant pain. His sleep is disrupted to the point that pain medications are required to aid in sleep. The Plaintiff is unable to bend down to tie his shoes as the metal plate in his neck cuts off his air supply. He does not have full range of motion in his affected shoulder and arm. The Defendants were fully aware of the Plaintiff's disability as evidenced by Defendants' supervisory personnel questioning the Plaintiff in May 2008 whether he would be able to continue to work in light of his health. The Defendants' deputy superintendent unequivocally directed the Plaintiff not to return to work unless he was released "100%" by his physicians. Such inquiry and directive could lead the trier of fact to the conclusion that the Defendants were aware of the Plaintiff's disability and limitations associated with his disability in May 2008. The Defendants' assertion that the Plaintiff does not have a disability covered by the ADA is refuted by the evidence and summary judgment would be improper as to this issue.

2. <u>An accommodation in this case is feasible.</u>

The Defendants make much ado about the Plaintiff's request for additional security at the alternative school as an accommodation to his disability and that such an accommodation is

unreasonable. Said argument is contained within pages 6 through 9 of the Defendants' summary judgment brief. Ironically, the Defendants simultaneously assert that the breaking up of student altercations or fights is not an essential function of the Plaintiff's position as principal. Please see page 7 of Defendants' summary judgment brief. Generally weight is given to an employer's assertion of what is or is not an essential function, but same cannot be held as conclusive. In sum, whether a particular function is "essential" to a job is considered on a case-by-case basis, *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1258 (11th Cir. 2007), and although an employer's view is accorded weight, it cannot be conclusive. *Id*. at 1258. (observing that allowing an employer free reign to decide what an "essential function" would allow employers to subvert the congressional mandate of the ADA by redefining at will disabled individuals as unqualified ones).

As the 11th Circuit has noted reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations." 42 U.S.C. § 12111(9)(B). The Appeals Court has also held that "..the ADA may require an employer to restructure a particular job by altering or eliminating some of its marginal functions." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001). At its core, the issue of whether breaking up physical altercations is an essential function of the principal position is a jury issue. *Calvo v. Walgreens Corporation*, 340 Fed. Appx. 618; 2009 U.S. App. LEXIS 17809 (11th Cir. 2009) (Summary judgment in favor of employer in ADA claim improper as question regarding what was or was not an essential function of Plaintiff's position was a question for the jury). Nonetheless, assuming arguendo that breaking up fights is not an essential function and by deduction would be a marginal function of the position, the Defendant was obligated to "alter" or "eliminate" this marginal function. The Defendants did

not, for example, expect Ms. McGee as principal of CLC to break up fights. The Defendants expectation in that regard was for Ms. McGee, a female, to call for help. The Defendants' non-expectation of physical involvement in fights by Ms. McGee is direct evidence that this function of the Plaintiff's position, whether essential or marginal, could have been eliminated as an accommodation.

Moreover, the Plaintiff's request for security at CLC is a reasonable accommodation in for his disability in these circumstances. The Plaintiff's official job responsibilities do not include physically restraining students. The Defendants cannot argue that employing a security guard at CLC is an undue financial hardship on the school system as the Superintendent admits that employing such guards is necessary at some schools based upon the level of discipline problems. The Defendants currently plan to spend more than one quarter million dollars employing uniformed guards at some schools is evidence that the expense of employing one uniformed guard at CLC would constitute a financial hardship. The Plaintiff's request for security at CLC would have been a reasonable accommodation which would have allowed the Plaintiff to continue performing the essential functions of his administrative position while also accommodating Plaintiff's disability by providing a designated employee to physically restrain students when necessary. Thus, summary judgment in relation to the Defendants' failure to accommodate the Plaintiff would be improper.

3.   <u>The Plaintiff suffered adverse employment action.</u>

The Defendants devote two paragraphs on page 9 of their summary judgment brief to the assertion that the Plaintiff did not suffer an adverse employment action and, thus, summary judgment should be entered in favor of the Defendants. Said assertion is totally without merit. Evidence has been presented that the Plaintiff was summarily told by the deputy superintendent of the school

system to not report back until such time as he was released to work "100%." The Defendants do not even attempt to assert that the medical releases provided by the Plaintiff disqualified him for the position. On page 9 of their brief, the Defendants simply argue that the Plaintiff returned to work and voluntarily retired two weeks later. The Defendant' position ignores and totally discounts the Plaintiff's assertion that he was instructed not to return to work without a total medical release. The deputy superintendent's directive, as consistently recalled by the Plaintiff, acted as a formulistic device to rid the school system of the Plaintiff. Such a device is similar to the employer's purported refusal to accept an employee's medical release in *Calvo v. Walgreens Corporation*, *supra.* Summary judgment was held to be improperly granted to the employer due to the Plaintiff's having created a genuine issue of fact regarding the Defendant's failure to accept her medical release. 340 Fed. Appx. 618 at \*\*17. In *Calvo*, Walgreens maintained that the Plaintiff could not return to work under the limitations contained within her medical release. However, Calvo offered evidence that she had been performing her job for a period with the same physical impairments/restrictions contained in the medical release. The 11th Circuit held that Calvo had created a jury issue regarding the medical release and Walgreens's stated reasons of nondiscrimination. *Id.* In the present matter, it is undisputed that at the time the Plaintiff returned to work in May 2008, he was performing the essential functions of his position. Accordingly, at a minimum, a jury question exists as to whether the Defendants' carte blanche refusal to allow the Plaintiff to continue his work without total release from his physicians was an act of discrimination under the ADA.

    Lastly, it must be noted that the Defendants herein were under an obligation to engage in a genuine, interactive process to attempt to assist the Plaintiff in maintaining his position in light of his disability. In the ordinary case, "it is the employee's initial request for an accommodation which

triggers the employer's obligation to participate in the interactive process of determining one." *Taylor v. The Principal Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *see also Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363-64 (11th Cir. 1999). Requests for accommodation do not have to come from the employee, do not have to be in writing, and do not have to "invoke the magic words of 'reasonable accommodation.'" *Taylor v. Phoenixville School District*, 184 F.3d 296, 313 (3d Cir. 1999). The employee, however, "must make clear that [he or she] wants assistance for his or her disability." *Id.* at 314. "What information the employee's initial notice must include depends on what the employer knows." *Id.*

Evidence abounds that the Defendants' personnel were fully aware of the Plaintiffs disability. It was the administration and the deputy superintendent in particular that prompted discourse with the Plaintiff regarding his health and ability to work at the meeting called by the Plaintiff to discuss budget and personnel cuts (and not to necessarily discuss his personal situation). The Defendants' reaction, via its deputy superintendent, was to summarily disqualify the Plaintiff until such time as he could be totally released by his physicians to return to work. There is no evidence that the Defendants attempted to engage in meaningful discussions with the Plaintiff about what could be done to accommodate his disability. To the contrary, evidence exists that the administration failed to speak with Mr. Smith, the EEOC compliance officer, regarding the Plaintiff and his medical restrictions. Had they done so, and according to Mr. Smith, he would have advised them that Plaintiff was cleared to return to his position which is considered a light duty position anyway.

An additional and telling piece of evidence in relation to the Defendants' discriminatory animus is the fact that the Defendants did not nor do they expect the Plaintiff's successor to engage in physical altercations with students, maintaining that McGee is not required nor expected to engage

in such altercations. But rather, McGee can simply call for assistance should such a situation arise. Although there is conflicting testimony regarding the Plaintiff's assertions, the trial court cannot be called upon to make determinations of credibility of witnesses. As noted by the 11th Circuit, at the summary judgment stage the court must avoid weighing conflicting evidence or making credibility determinations. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). All inferences must be drawn in a light most favorable to the non-movant. Accordingly, any conflict in testimony at this stage must be resolved in favor of the Plaintiff.

CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment should be denied.


Respectfully submitted,

s/ Allison Kahalley
Allison Kahalley (KAHAA8124)

THE GARDNER FIRM, P.C.
Attorneys for Plaintiff
P.O. Drawer 3103
Mobile, AL 36652
(251) 433-8100 (Telephone)
(251) 433-8181 (Facsimile)

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have on this 3rd day of December, 2010, served a copy of the foregoing on the following by placing a copy of same in the United States Mail, properly addressed and first class postage prepaid.

K. Paul Carbo, Jr.
THE ATCHISON FIRM
303 Knollwood Drive
Mobile, Alabama  36693

                                                                             s/ Allison Kahalley
                                                                     ALLISON KAHALLEY (KAHAA8124)